1   WO

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   John William Seitz,                      )   CIV 14-0087-PHX-PGR (MHB)
                                             )
10              Petitioner,                   )   **REPORT AND RECOMMENDATION**
                                             )
11  vs.                                       )
                                             )
12  Charles L. Ryan, et al.,                  )
                                             )
13              Respondents.                  )
                                             )
14  _____          )

15  TO THE HONORABLE PAUL G. ROSENBLATT, UNITED STATES DISTRICT

16  COURT:

17          On January 16, 2014, Petitioner John William Seitz, who is confined in the Central

18  Arizona Correctional Facility, filed a *pro se* Petition for Writ of Habeas Corpus pursuant to

19  28 U.S.C. § 2254 (Doc. 1).  In an April 8, 2014 Order, the Court dismissed the Petition

20  without prejudice and granted Petitioner 30 days to file a first amended petition.  On April

21  16, 2014, Petitioner filed a First Amended Petition (Doc. 7).  Respondents filed an Answer

22  on August 25, 2014 (Doc. 14).  Despite having an opportunity to do so, Petitioner has not

23  filed a reply.

24  \\\

25  \\\

26  \\\

27  \\\

28  \\\

1                                **BACKGROUND**[1]

2          On December 20, 2010, the State indicted Petitioner, John William Seitz, on four

3    counts of sexual conduct with a minor and one count of sexual exploitation of a minor. (Exh.

4    A.)

5              On November 13, 2010, Shaun Lyons reported to police that his girlfriend's
               eight[-]year[-]old son was being molested by his (the child's) grandfather,
6              [Petitioner].  Mr. Lyons told officers that he had been doing some work at his
               girlfriend's residence and was looking in the garage for a hammer.  He opened
7              a tool box and found several dildos, KY jelly, several nude pictures of
               [Petitioner] and a nude picture of the victim with an erect penis.  In the picture,
8              it appeared as if the victim was sleeping.  Mr. Lyons and the victim's mother,
               Marjorie Seitz, subsequently recorded a conversation they had with the victim
9              where he admitted that his grandfather had molested him.

10             During an interview with police, Marjorie Seitz reported to police that she had
               suspected the abuse had been ongoing for several years.  On one occasion five
11             years prior, Ms. Seitz found [Petitioner] and her son in an inflatable pool
               together and one of them (she could not remember which) was not wearing
12             shorts.  Around the same time, [Petitioner] had admitted to her and her brother
               that he had touched the victim in a sexually inappropriate manner.   She
13             immediately took her son away and refused to return to the house for several
               days.  She confronted [Petitioner] who was crying and told her he was having
14             a hard time since his wife had been hospitalized with an illness.  Ms. Seitz
               eventually returned to the home with her son.
15
               After some other issues, [Petitioner] and his wife were able to successfully
16             take away custody from Ms. Seitz and the victim lived with them full-time.
               In April 2010, Ms. Seitz walked into the home and found [Petitioner] standing
17             by [the] couch pulling up his pants while the victim was lying on the couch
               below him.  She confronted [Petitioner] again, but did not report the abuse.  In
18             May 2010, Ms. Seitz moved home and did her best to make sure [Petitioner]
               was never alone with her son.  She noticed changes in her son and suspected
19             the abuse was still ongoing; however, she did not know how to report the
               abuse without it looking like retaliation for her custodial rights being taken
20             away.  After finding the picture with Mr. Lyons, Ms. Seitz and Mr. Lyons
               waited over two weeks to report the incident to police and it was only reported
21             after a domestic dispute where the police were called to the residence.  Ms.
               Seitz told police that her mother had cancer and she did not want to cause any[
22             ]more stress by reporting what she suspected.

23             During police questioning, [Petitioner] admitted that he not only took the nude
               photograph of the victim, but that he also placed his hands and mouth on the
24             victim's penis. [Petitioner] claimed the victim was curious about sex, initiated
               the sexual contact and tried to show [Petitioner] a pornographic movie.
25             [Petitioner] also admitted that he ejaculated (less than five times) when the

26

27        ────────────────────
            [1] Unless otherwise noted, the following facts are derived from the exhibits submitted
28    with Doc. 14 – Respondents' Answer.

victim masturbated his penis.  [Petitioner] reported the victim knew about sex before [Petitioner] ever touched him.

(Exh. B at 1-2.)

The victim was later placed in foster care.  (Id. at 2.)  He is in therapy and requires medication to help him sleep at night.  (Id.)

The presentence report described Petitioner's response to the allegations during a pre-sentence interview:

[Petitioner] indicated his grandson lived with him and his wife.  He would sometimes give his grandson a shower and may have touched him, but it was only to clean him.  He denied any sexual motivation in touching his grandson's body.  [Petitioner] also admitted he took a picture of his grandson in the nude; however, he denied there was any sexual motivation.  He kept the picture locked away and had no intention of putting it on a website.  He took the picture simply because he wanted a picture so he could always remember his grandson.  When asked why his grandson had to be nude in the picture if there was no sexual motivation, [Petitioner] replied that he did not know.

(Id.)

On December 5, 2011, Petitioner pled guilty.  (Exh. C; Exh. D; Exh. E at 2-11.) Under the terms of the written plea agreement, Petitioner pled to two counts of attempted child molestation and one count of attempted sexual exploitation to a minor.  (Exh. C at 1.) Petitioner also agreed to a sentence between 10 and 15 years for the sexual exploitation count and to serve lifetime probation as a sex offender.  (Id. at 1.)  In exchange, the State permitted Petitioner to plead guilty to attempted crimes (rather than the completed offenses) and dismissed the remaining charges.  (Id. at 2.)  At the plea hearing, Petitioner said he understood the plea agreement and agreed to it knowingly, intelligently, and voluntarily. (Exh. E at 4-11.)  Petitioner also agreed with his lawyer's factual basis for the plea.  (Id. at 10.)

The trial court accepted Petitioner's plea and found it to be entered knowingly, intelligently, and voluntarily.  (Id. at 11.)  On January 31, 2012, the court sentenced Petitioner to 12 years of imprisonment for the sexual exploitation count and to lifetime probation for the remaining counts.  (Exh. F at 9-11; Exh. G; Exh. H.)

1        On May 14, 2012, Petitioner filed a notice of post-conviction relief in the Arizona

2   Superior Court.  (Exh. I.)  Petitioner checked a box on the pre-printed form indicating that

3   he wanted to raise an ineffective assistance of counsel claim.  (Id. at 2.)  Petitioner, however,

4   did not provide a factual basis for the claim, nor did he suggest that he wished to raise any

5   other claims based on other legal theories.  (Id. at 1-3.)

6        The Arizona trial court appointed counsel.  (Exh. J.)  After reviewing the case,

7   Petitioner's counsel was "unable to find any claims for relief to raise in postconviction

8   proceedings" and declined to file a post-conviction petition on Petitioner's behalf.  (Exh. K

9   at 1-2.)  Petitioner's counsel requested a 45-day extension of time to allow Petitioner to file

10  a *pro se* post-conviction petition.  (Id. at 2.)  On October 19, 2012, the trial court granted the

11  request and gave Petitioner "45 days from today's date" (i.e., until December 3, 2012) to file

12  a *pro se* post-conviction petition.  (Exh. L at 1.)  Petitioner did not do so.  (Exh. M.)  On

13  January 3, 2013, the trial court noted that Petitioner had not filed a post-conviction petition

14  and that there was "[n]o good cause appearing" for this failure.  (Id.)  The trial court

15  accordingly dismissed the post-conviction proceedings.  (Id.)

16       Seven months later, on August 3, 2013, Petitioner filed a petition for review of this

17  dismissal in the Arizona Court of Appeals.  (Exh. N.)  Construed liberally, the petition for

18  review raised the following claims:

19       (1) Petitioner's trial counsel was ineffective because:

20            (a) counsel falsely promised that Petitioner would be sentenced to probation;

21            (b) counsel allowed a private investigator to charge $8,000 for investigations
             that never took place;

22

23            (c) counsel "failed to acknowledge that there [was] no DNA, and the entire
             case is based on hearsay and [a coerced] confession";

24            (d) counsel failed to investigate whether Petitioner's daughter and her
             boyfriend opened Petitioner's toolbox "without permission";

25

26            (e) counsel failed to investigate whether "[Petitioner] was accused of having
             nude photo [sic] of the victim on his computer, in which there was no finding
             of any photo[]s";

27

28            (f) counsel failed to investigate whether Petitioner's daughter and her
             boyfriend "committed perjury when they told the Investigating Officer that

they had pictures and a recording of [Petitioner] admitting to molesting the victim";

(g) counsel failed to investigate whether Petitioner's daughter and her boyfriend "made the allegation against [Petitioner] because [Petitioner] was appointed full custody of the child (victim) and in hope of the State returning the child back to her"; and

(h) counsel "failed to conduct the proper steps to investigate this case, even after soliciting and extorting [Petitioner] out of $48,000";

(2) the police violated <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), when they interviewed Petitioner by telephone without reading him his rights first;

(3) "Attempted Sexual Exploitation" is "not a complete crime" because it is impossible to "Attempt to Exploit anyone"; "[i]t's either a complete crime or not";

(4) Petitioner's 12 year sentence is "cruel and unusual" because "the ben[e]fit of spending the rest of his life in prison is unethical";

(5) Petitioner should have received probation for the attempted-sexual-exploitation count;

(6) Petitioner "was subjected to prosecutorial misconduct because of the extreme prejudice toward him, he was convicted of a crime that [was] based on hearsay";

(7) Petitioner's "plea was involuntary and constitutes cruel and unusual punishment"; and

(8) it is "impossible to commit an attempt[ed] crime, and then be charged with the complete crime."

(<u>Id.</u> at 2-8.)

On August 13, 2013, the Arizona Court of Appeals dismissed Petitioner's petition for

review in an order stating:

A review of the record in this matter indicates that the trial court summarily dismissed the petition for post-conviction relief on January 3, 2013, and the petition for review was not filed until August 5, 2013. The petition for review was not filed within 30 days of the trial court's final decision disposing of the petition for post-conviction relief proceedings. See [Ariz. R. Crim. P. 32.9(c)]. A petitioner who seeks appellate review of the actions of the trial court must file a petition within 30 days after the final decision of the trial court. Whether petitioner was without fault for the untimely filing is a question of fact. The trial court may, after being presented with proper evidence, allow a late filing if it finds that petitioner was not responsible for the untimely filing. [Citation]. Because the petition in this matter is untimely, IT IS ORDERED dismissing this matter.

(Exh. O ) (internal quotation marks omitted).

1    Petitioner then filed a petition for review in the Arizona Supreme Court, raising

2  essentially the same claims.  (Exh. P.)  The Arizona Supreme Court denied review on

3  December 20, 2013.  (Exh. Q.)

4    Petitioner filed a Petition for a Writ of Habeas Corpus on January 15, 2014.  (Doc. 1.)

5  The Court dismissed the Petition with leave to amend, and Petitioner filed an Amended

6  Petition on April 1, 2014.  (Doc. 7.)

7    In Ground One, Petitioner claims that he received "ineffective assistance of

8  counsel/extortion" in violation of his Fifth, Sixth, and Fourteenth Amendment rights because

9  his defense attorney promised him probation, took $40,000 from him in exchange for that

10  promise, and failed to investigate his case.

11    In Ground Two, Petitioner claims that his Fifth and Fourteenth Amendment rights

12  were violated when a detective interviewed him by telephone without advising him of his

13  Miranda rights.

14    In Ground Three, Petitioner claims that his Fifth, Sixth, and Fourteenth Amendment

15  rights were violated by "theft of service" because Petitioner paid a private investigator

16  $8,000 to investigate his case.  Petitioner paid his attorney $40,000 in exchange for the

17  promise that his attorney would "get him probation."  After receiving their fees, the attorney

18  and private investigator stopped communicating with Petitioner.

19    In Ground Four, Petitioner alleges that his Fifth, Eighth, and Fourteenth Amendment

20  rights were violated because he was charged with attempted sexual exploitation, although

21  there is not "legal standing" for that charge.  Petitioner further alleges that his sentence of

22  two concurrent terms of lifetime probation constitutes double jeopardy.  Petitioner alleges

23  that the State violated the sentencing guidelines and the Arizona Rules of Criminal

24  Procedure.  Lastly, Petitioner alleges that the prosecutor suppressed material exculpatory

25  evidence.

26  \\\

27  \\\

28

1

**DISCUSSION**

2       In their Answer, Respondents contend that the grounds for relief set forth in

3  Petitioner's amended habeas petition are procedurally defaulted.  As such, Respondents

4  request that the Court deny and dismiss Petitioner's habeas petition with prejudice.

5       A state prisoner must exhaust his remedies in state court before petitioning for a writ

6  of habeas corpus in federal court. See 28 U.S.C. § 2254(b)(1) and (c); Duncan v. Henry, 513

7  U.S. 364, 365-66 (1995); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991).  To

8  properly exhaust state remedies, a petitioner must fairly present his claims to the state's

9  highest court in a procedurally appropriate manner.  See O'Sullivan v. Boerckel, 526 U.S.

10 838, 839-46 (1999).  In Arizona, a petitioner must fairly present his claims to the Arizona

11 Court of Appeals by properly pursuing them through the state's direct appeal process or

12 through appropriate post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th

13 Cir. 1999); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

14      Proper exhaustion requires a petitioner to have "fairly presented" to the state courts

15 the exact federal claim he raises on habeas by describing the operative facts and federal legal

16 theory upon which the claim is based.  See, e.g., Picard v. Connor, 404 U.S. 270, 275-78

17 (1971) ("[W]e have required a state prisoner to present the state courts with the same claim

18 he urges upon the federal courts.").  A claim is only "fairly presented" to the state courts

19 when a petitioner has "alert[ed] the state courts to the fact that [he] was asserting a claim

20 under the United States Constitution." Shumway v. Payne, 223 F.3d 982, 987 (9th Cir. 2000)

21 (quotations omitted); see Johnson v. Zenon, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner

22 fails to alert the state court to the fact that he is raising a federal constitutional claim, his

23 federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

24      A "general appeal to a constitutional guarantee," such as due process, is insufficient

25 to achieve fair presentation. Shumway, 223 F.3d at 987 (quoting Gray v. Netherland, 518

26 U.S. 152, 163 (1996)); see Castillo v. McFadden, 399 F.3d 993, 1003 (9th Cir. 2005)

27 ("Exhaustion demands more than drive-by citation, detached from any articulation of an

28 underlying federal legal theory.").  Similarly, a federal claim is not exhausted merely because

1   its factual basis was presented to the state courts on state law grounds – a "mere similarity

2   between a claim of state and federal error is insufficient to establish exhaustion." Shumway,

3   223 F.3d at 988 (quotations omitted); see Picard, 404 U.S. at 275-77.

4          Even when a claim's federal basis is "self-evident," or the claim would have been

5   decided on the same considerations under state or federal law, a petitioner must still present

6   the federal claim to the state courts explicitly, "either by citing federal law or the decisions

7   of federal courts." Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000) (quotations

8   omitted), amended by 247 F.3d 904 (9th Cir. 2001); see Baldwin v. Reese, 541 U.S. 27, 32

9   (2004) (claim not fairly presented when state court "must read beyond a petition or a brief

10  ... that does not alert it to the presence of a federal claim" to discover implicit federal claim).

11         Additionally, under the independent state grounds principle, a federal habeas court

12  generally may not review a claim if the state court's denial of relief rests upon an

13  independent and adequate state ground. See Coleman v. Thompson, 501 U.S. 722, 731-32

14  (1991). The United States Supreme Court has explained:

15         In the habeas context, the application of the independent and adequate state
           ground doctrine is grounded in concerns of comity and federalism. Without
16         the rule, a federal district court would be able to do in habeas what this Court
           could not do on direct review; habeas would offer state prisoners whose
17         custody was supported by independent and adequate state grounds an end run
           around the limits of this Court's jurisdiction and a means to undermine the
18         State's interest in enforcing its laws.

19  Id. at 730-31. A petitioner who fails to follow a state's procedural requirements for

20  presenting a valid claim deprives the state court of an opportunity to address the claim in

21  much the same manner as a petitioner who fails to exhaust his state remedies. Thus, in order

22  to prevent a petitioner from subverting the exhaustion requirement by failing to follow state

23  procedures, a claim not presented to the state courts in a procedurally correct manner is

24  deemed procedurally defaulted, and is generally barred from habeas relief. See id. at 731-32.

25         Claims may be procedurally barred from federal habeas review based upon a variety

26  of factual circumstances. If a state court expressly applied a procedural bar when a petitioner

27  attempted to raise the claim in state court, and that state procedural bar is both

28

1   "independent"[2] and "adequate"[3] – review of the merits of the claim by a federal habeas court

2   is barred.  See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) ("When a state-law default

3   prevents the state court from reaching the merits of a federal claim, that claim can ordinarily

4   not be reviewed in federal court.") (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977)

5   and Murray v. Carrier, 477 U.S. 478, 485-492 (1986)).

6          Moreover, if a state court applies a procedural bar, but goes on to alternatively address

7   the merits of the federal claim, the claim is still barred from federal review.  See Harris v.

8   Reed, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of

9   a federal claim in an *alternative* holding.  By its very definition, the adequate and

10  independent state ground doctrine requires the federal court to honor a state holding that is

11  a sufficient basis for the state court's judgment, even when the state court also relies on

12  federal law. ... In this way, a state court may reach a federal question without sacrificing its

13  interests in finality, federalism, and comity.") (citations omitted); Bennett v. Mueller, 322

14  F.3d 573, 580 (9th Cir. 2003) ("A state court's application of a procedural rule is not

15  undermined where, as here, the state court simultaneously rejects the merits of the claim.")

16  (citing Harris, 489 U.S. at 264 n.10).

17         A procedural bar may also be applied to unexhausted claims where state procedural

18  rules make a return to state court futile.  See Coleman, 501 U.S. at 735 n.1 (claims are barred

19  from habeas review when not first raised before state courts and those courts "would now

20  find the claims procedurally barred"); Franklin v. Johnson, 290 F.3d 1223, 1230-31 (9th Cir.

21  2002) ("[T]he procedural default rule barring consideration of a federal claim 'applies only

22  when a state court has been presented with the federal claim,' but declined to reach the issue

23

24

25      [2] A state procedural default rule is "independent" if it does not depend upon a federal

26  constitutional ruling on the merits.  See Stewart v. Smith, 536 U.S. 856, 860 (2002).

27      [3] A state procedural default rule is "adequate" if it is "strictly or regularly followed."

28  Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (quoting Hathorn v. Lovorn, 457 U.S. 255, 262-53 (1982)).

1  for procedural reasons, or 'if it is clear that the state court would hold the claim procedurally

2  barred.'") (quoting <u>Harris</u>, 489 U.S. at 263 n.9).

3  In Arizona, claims not previously presented to the state courts via either direct appeal

4  or collateral review are generally barred from federal review because an attempt to return to

5  state court to present them is futile unless the claims fit in a narrow category of claims for

6  which a successive petition is permitted. <u>See</u> Ariz.R.Crim.P. 32.1(d)-(h), 32.2(a) (precluding

7  claims not raised on appeal or in prior petitions for post-conviction relief), 32.4(a) (time bar),

8  32.9(c) (petition for review must be filed within thirty days of trial court's decision). Arizona

9  courts have consistently applied Arizona's procedural rules to bar further review of claims

10 that were not raised on direct appeal or in prior Rule 32 post-conviction proceedings. <u>See,</u>

11 <u>e.g., Stewart</u>, 536 U.S. at 860 (determinations made under Arizona's procedural default rule

12 are "independent" of federal law); <u>Smith v. Stewart</u>, 241 F.3d 1191, 1195 n.2 (9th Cir. 2001)

13 ("We have held that Arizona's procedural default rule is regularly followed ["adequate"] in

14 several cases.") (citations omitted), <u>reversed on other grounds</u>, <u>Stewart v. Smith</u>, 536 U.S.

15 856 (2002); <u>see also Ortiz v. Stewart</u>, 149 F.3d 923, 931-32 (rejecting argument that Arizona

16 courts have not "strictly or regularly followed" Rule 32 of the Arizona Rules of Criminal

17 Procedure); <u>State v. Mata</u>, 185 Ariz. 319, 334-36, 916 P.2d 1035, 1050-52 (Ariz. 1996)

18 (waiver and preclusion rules strictly applied in post-conviction proceedings).

19 The federal court will not consider the merits of a procedurally defaulted claim unless

20 a petitioner can demonstrate that a miscarriage of justice would result, or establish cause for

21 his noncompliance and actual prejudice. <u>See Schlup v. Delo</u>, 513 U.S. 298, 321 (1995);

22 <u>Coleman</u>, 501 U.S. at 750-51; <u>Murray</u>, 477 U.S. at 495-96. Pursuant to the "cause and

23 prejudice" test, a petitioner must point to some external cause that prevented him from

24 following the procedural rules of the state court and fairly presenting his claim. "A showing

25 of cause must ordinarily turn on whether the prisoner can show that some objective factor

26 external to the defense impeded [the prisoner's] efforts to comply with the State's procedural

27 rule. Thus, cause is an external impediment such as government interference or reasonable

28 unavailability of a claim's factual basis." <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1052 (9th Cir.

1  2004) (citations and internal quotations omitted).  Ignorance of the State's procedural rules

2  or other forms of general inadvertence or lack of legal training and a petitioner's mental

3  condition do not constitute legally cognizable "cause" for a petitioner's failure to fairly

4  present his claim.  Regarding the "miscarriage of justice," the Supreme Court has made clear

5  that a fundamental miscarriage of justice exists when a Constitutional violation has resulted

6  in the conviction of one who is actually innocent.  See Murray, 477 U.S. at 495-96.

7  The Court finds that Petitioner's claims are procedurally defaulted.  Petitioner failed

8  to file a petition for post-conviction relief.  Instead, construed liberally, Petitioner raised the

9  claims he asserts in his habeas petition for the first time in his petition for review to the

10  Arizona Court of Appeals.  Raising claims for the first time to an appellate court on

11  discretionary review does not constitute fair presentation of those claims for purposes of

12  satisfying the exhaustion requirement.  See Castille v. Peoples, 489 U.S. 346, 351-52 (1989)

13  (raising a new claim to a state court that has discretionary review does not constitute fair

14  presentation); Casey v. Moore, 386 F.3d 896, 915-919 (9th Cir. 2004) (holding that "under

15  *Castille*, [the petitioner] did not fairly present his federal law claims when he raised them for

16  the first and only time upon petitioning for discretionary review to the [state supreme

17  court].").  The Arizona Court of Appeals has only discretionary jurisdiction over petitions

18  for review from the denial of post-conviction relief.  See Ariz. R. Crim. P. 32.9(f) (stating

19  that the "appellate court may, in its discretion, grant review and order oral argument if

20  deemed necessary ... .").  Accordingly, Petitioner did not properly exhaust any of the claims

21  asserted in his habeas petition.  Moreover, it would be futile for Petitioner to return to the

22  state court to exhaust his claims and, as such, they are procedurally defaulted.  See Ariz. R.

23  Crim. P. 32.2 and 32.4.

24  Additionally, when Petitioner sought review of the trial court's decision in the court

25  of appeals, the appellate court dismissed the petition for review as untimely.  The court cited

26  Rule 32.9(c), which provides that a petition for review must be filed within thirty days of the

27  trial court's ruling on the petition for post-conviction relief.  The appellate court's procedural

28  ruling based on Rule 32.9(c) did not depend on federal law or an examination of the merits

1    of Petitioner's claims and, thus, the ruling was "independent" of federal law.  See Nitschke

2    v. Belleque, 680 F.3d 1105, 1110 (9th Cir. 2012) (discussing requirement that state procedural

3    rule must rest on an "independent" state law ground).

4            Arizona courts have also regularly and consistently followed Rule 32.9(c) by

5    summarily dismissing or denying petitions for review for failure to comply with the rule's

6    requirements.  See Simmons v. Schriro, 187 Fed. App'x. 753, 754 (9th Cir. 2006) (holding

7    that Arizona's procedural rules, including its timeliness rules, are "clear" and

8    "well-established"); Miloni v. Schriro, 2006 WL 1652578, *5 (D. Ariz. Jun. 7, 2006)

9    (concluding that a procedural ruling based on Rule 32.9(c) is adequate); State v. French, 7

10   P.3d 128, 131 (Ariz. Ct. App. 2000) (summarily rejecting claims for failure to comply with

11   Rule 32.9), disapproved of on other grounds by Stewart v. Smith, 46 P.3d 1067, 1071 (Ariz.

12   Ct. App. 2002); State v. Carriger, 692 P.2d 991, 995 (Ariz. 1984) (observing that

13   "[p]etitioners must strictly comply with Rule 32 or be denied relief").  The timeliness

14   requirements of Rule 32.9 are firmly established and regularly followed in Arizona.  Thus,

15   the appellate court's ruling based on Rule 32.9(c) was "adequate."  See Bennett, 322 F.3d

16   at 583 ("To be deemed adequate the state law ground for decision must be well-established

17   and consistently applied.").  Because the appellate court applied an independent and adequate

18   state law ground to deny review of the claims that Petitioner presents in his habeas petition,

19   federal habeas corpus review of those claims is procedurally barred.

20           Petitioner has not established grounds to excuse the procedural default by a showing

21   of cause and prejudice, and he has not argued a fundamental miscarriage of justice.  As stated

22   previously, ignorance of the State's procedural rules or other forms of general inadvertence

23   or lack of legal training and a petitioner's mental condition do not constitute legally

24   cognizable "cause" for a petitioner's failure to fairly present his claim.  And, although

25   "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish

26   cause for a prisoner's procedural default of a claim of ineffective assistance at trial,"

27   Martinez v. Ryan, ––– U.S. –––, 132 S.Ct. 1309, 1315 (2012), Petitioner fails to satisfy the

28

- 12 -

1   ineffective assistance of counsel standard under <u>Martinez</u>.[4]   Accordingly, <u>Martinez</u> is not

2   applicable.

3                                         **CONCLUSION**

4          The claims set forth in Petitioner's amended habeas petition are procedurally

5   defaulted.  Thus, the Court will recommend that Petitioner's Amended Petition for Writ of

6   Habeas Corpus be denied and dismissed with prejudice.

7          **IT IS THEREFORE RECOMMENDED** that Petitioner's Amended Petition for

8   Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 7) be **DENIED** and

9   **DISMISSED WITH PREJUDICE**;

10         **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave

11  to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is

12  justified by a plain procedural bar and jurists of reason would not find the procedural ruling

13  debatable.

14         This recommendation is not an order that is immediately appealable to the Ninth

15  Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

16  Appellate Procedure, should not be filed until entry of the district court's judgment.  The

17  parties shall have fourteen days from the date of service of a copy of this recommendation

18  within which to file specific written objections with the Court.  <u>See</u> 28 U.S.C. § 636(b)(1);

19  Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure.  Thereafter, the parties have fourteen

20  days within which to file a response to the objections.  Failure timely to file objections to the

21  Magistrate Judge's Report and Recommendation may result in the acceptance of the Report

22  and Recommendation by the district court without further review.  <u>See</u> <u>United States v.</u>

23  <u>Reyna-Tapia</u>, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to file objections to any

24  factual determinations of the Magistrate Judge will be considered a waiver of a party's right

25

26

27         [4]  In <u>Nguyen v. Curry</u>, 736 F.3d 1287, 1293 (9th Cir. 2013), the Ninth Circuit Court
    of Appeals extended <u>Martinez</u> to also apply to underlying claims of ineffective assistance of
28  appellate counsel.

1  to appellate review of the findings of fact in an order or judgment entered pursuant to the

2  Magistrate Judge's recommendation.  <u>See</u> Rule 72, Federal Rules of Civil Procedure.

3       DATED this 30th day of October, 2014.

4

5

Michelle H. Burns
United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28